THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM H. NELSON, Defendant-Appellant.

Fourth District   No. 15444

Opinion filed October 16, 1979.—Rehearing denied November 13, 1979.

GREEN, J., specially concurring.

Richard J. Wilson and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Marc D. Towler and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant, William H. Nelson, after a jury trial, was convicted of burglary and theft over $150 (Ill. Rev. Stat. 1977, ch. 38, pars. 19—1, 16—1). On appeal, he argues that his conviction should be overturned because of conflict-of-interest problems raised when McLean County assistant public defenders represented both him and his codefendant. We agree.

■■ ■ It is well established in Illinois law that where a potential conflict threatened adequacy of representation at trial, reversal is necessary without any showing of actual prejudice. (*People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67; *People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421.) It is enough that there be a showing that the attorney had a commitment to some other person or cause adverse to defendant's interest. (*People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169;

*People v. Freeman* (1978), 60 Ill. App. 3d 794, 377 N.E.2d 107.) While the bare fact that the attorney also represents a codefendant is not enough to invoke the per se rule, the facts in this case demonstrate an actual conflict between the codefendants sufficient to raise a presumption of adverse interest. Defendant repeatedly attempted to call his codefendant as a witness, but the codefendant, after consultation with his attorney, pleaded the fifth amendment. It should have been apparent to the trial court that defendant's desire to secure the codefendant's testimony was at odds with the best interests of that codefendant, and therefore created a conflict between the two.

■■ While the defendant and codefendant here were not actually represented by the same individual, both were assistant public defenders. In conflict-of-interest disputes, assistant public defenders are treated as one lawyer or at least as though they were members of the same firm. (*People v. Meng* (1977), 54 Ill. App. 3d 357, 369 N.E.2d 549; *People v. Benford* (1975), 31 Ill. App. 3d 892, 335 N.E.2d 106; *People v. Freeman* (1978), 60 Ill. App. 3d 794; 377 N.E.2d 107.) A panel of this court has recognized an exception where the public defender's office is decentralized, and those cases arose in counties where assistant public defenders were appointed by the circuit court, rather than by one public defender. (*People v. Puckett* (1979), 70 Ill. App. 3d 743, 388 N.E.2d 1293; *People v. South* (1979), 70 Ill. App. 3d 245, 387 N.E.2d 1294.) In *People v. Robinson* (Oct. 2, 1979, Nos. 50830, 50901, 51044 cons.), ___ Ill. 2d ___, ___ N.E.2d ___, the supreme court, in an in-depth consideration of the conflict opinions and rule, concluded that joint representation of multiple criminal defendants is not per se violative of the guarantee of effective assistance of counsel. Such frequently presents the potential for denial of that right. In substance, the supreme court seems to indicate that there has to be an *ad hoc* examination of the facts, and circumstances, and degree of conflict.

Viewing this record within the limitations discussed in *Robinson*, we see a conflict of interest arising out of the multiple representation where a single defender or individual defenders represent multiple defendants and for one reason or another conflicting interests occur at or during trial. The niceties of the organization of the public defender's office, indeed whether organized pursuant to or contrary to the statutory scheme, are not dispositive of the issue. A defendant is entitled to representation by counsel who does not have an obligation to another and who does not have a conflict. If there is a conflict, Illinois long has had and continues to have a per se rule. (See *People v. Fife* (1979), 76 Ill. 2d 418.) The showing of the conflict is sufficient for reversal without any effort to find the existence of prejudice and certainly without any effort to

quantify the degree of prejudice. Here, the assistant public defenders were part and parcel of one office, and that office had the ultimate responsibility for their actions, and conflicts existed specifically the same as those found in *Meng, Benford,* and *Freeman.* Thus, this case does not technically fall within the exceptions sought to be engrafted on the rule by the opinions in *Puckett* and *South.*

■ Nor can it be said that the possibility of a conflict was not brought to the trial court's attention. Though no formal motion for substitution of counsel was made on that basis at trial or in the post-trial motion, the trial court had ample opportunity to observe that the defendant and codefendant were at odds over the question of codefendant's testimony. It was incumbent upon the trial court judge to secure appointment of independent counsel when that conflict became obvious.

The composition of the McLean County public defender's office was described to this court in an affidavit attached to the State's brief, and defendant has registered an objection to this method of bringing facts to the attention of the appellate court. While the procedure was inappropriate, there is no dispute over the facts alleged in that affidavit, and consequently no reason to remand for proper submission of evidence.

For the reasons stated above, this cause is reversed and remanded for a new trial.

Reversed and remanded for a new trial.

REARDON, P. J., concurs.

Mr. JUSTICE GREEN, specially concurring:

I concur in the result reached but choose to speak separately on certain matters.

In *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227, and *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, the supreme court has recently held that joint representation of multiple criminal defendants is not *per se* constitutionally improper. I consider the significance of *Robinson* to go substantially beyond restating the above principle and indicating that an *ad hoc* examination of the facts, circumstances, and degree of conflict in each case must be made. The *Robinson* court stated:

> "Upon review of the authorities and consideration of the diversity of organization of the offices of the public defenders, we are not persuaded that in order to avoid conflicts of interest which result in failure to provide effective assistance of counsel we are required to hold that the individual attorneys who comprise the staff of a public defender are members of an entity which should

be subject to the rule that if one attorney is disqualified by reason of a conflict of interest then no other member of the entity may continue with the representation." See *People v. Robinson* (Oct. 2, 1979, Nos. 50830, 50901, 51044 cons.), ___ Ill. 2d ___, ___.

As the *Robinson* court determined the defendants there not to have been deprived of effective assistance of counsel even if the public defenders' offices involved were considered to be the same as ordinary law firms, the above may be considered to be dicta. However, the lengthy discussion which preceded it and its consideration prior to discussion of other points indicate that it is, at least, important dicta. Because the court's determination, rejecting necessarily equating public defenders' offices with other groups of lawyers, is based partially upon "consideration of the diversity of organization" of defenders offices, I find the "niceties of the organization" of public defenders to be very significant. I deem it to be "dispositive" here in that if the McLean County Public Defender's Office was organized as in *South* or *Puckett*, I would affirm and consider my position to be supported by *Robinson.*

However, the statement in *Robinson* did not say that an interest of a member of a public defender's office which differed from the interest of a defendant represented by another member of that office never created a conflict of interest for the latter attorney. Even assuming the State's affidavits to be properly before us, I agree that the record does not show the defender's office in question to have the decentralization existing in *Puckett* and *South*. Here, the defendant and a co-defendant not joined for trial had a conflict of interest which concerned the presentation of defendant's defense. Defendant's best interests seemed to require that the co-defendant testify, while the best interests of the co-defendant were to the contrary. In *Robinson*, on the other hand, the issues did not involve a situation where one public defender had a substantial conflict with another defender as to the presentation of the defense at trial. I thus deem the pre-*Robinson* precedent to control the decision here.

I agree with the majority that *Robinson* did not overrule the doctrine that if sufficient conflict is shown, prejudice is conclusively presumed. Here, the indications of actual prejudice were almost nonexistent. It appears most unlikely that the co-defendant would have testified if he had independent counsel or that if counsel representing defendant had been independent he could have been more effective in getting the co-defendant to testify. Furthermore, any failure on the part of counsel for co-defendant to permit him to testify would not appear to result from a dual responsibility that counsel had to defendant. Nevertheless, the rule that prejudice be presumed if sufficient conflict is shown is justified because of the difficulty of proving actual prejudice when it may be most subtle.

Great burdens are placed on the trial court in a criminal case when, during the course of a jury trial, the court is made aware that a defense counsel has a conflict of interest. *Robinson* indicates that a waiver of conflict may properly be obtained from a defendant more easily than dicta in *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, might have indicated. However, if waiver is not obtained, the court will likely have great difficulty in obtaining new counsel able to step in and conduct the defense without a continuance for preparation that will necessitate declaration of a mistrial. Accordingly, it is highly desirable that counsel inform the court as soon as the likelihood of a conflict arises and that the trial court make all proper inquiries to determine the existence of such a situation.